JOAQUÍN RODRÍGUEZ RODRÍGUEZ, demandante y apelante, *v.* MARÍA CORTÉS MARRERO, demandada y apelada.

Núm. 8407.—*Sometido:* Marzo 13, 1942. *Resuelto:* Marzo 16, 1942.

*V. Polanco de Jesús,* abogado del apelante; *Luis Mercader,* abogado de la apelada.

EL JUEZ PRESIDENTE SEÑOR DEL TORO emitió la opinión del tribunal.

Se trata en este caso del cobro de una deuda garantizada con hipoteca. La demandada aceptó la existencia de la deuda en su día pero a su vez contrademandó en solicitud de sentencia ordenando al demandante que la cancelara en forma. La corte falló en favor de la demandada y el demandante apeló, imputando a la corte sentenciadora tres errores como cometidos al apreciar la prueba, al dictar sentencia contraria a la misma y a la ley y al imponerle las costas.

La demanda se interpuso en marzo, 1935. Dos años después aparece el secretario de la corte de distrito registrando

una sentencia en rebeldía a petición del demandante condenando a la demandada a pagar la suma reclamada, a saber, cuatrocientos cincuenta dólares.

Inmediatamente pidió la demandada que se dejara sin efecto la rebeldía y se anulara la sentencia. Y así fué acordado.

En mayo 3, 1937, archivó la demandada su contestación negando generalmente los hechos de la demanda. Contrademandó además alegando que al ser emplazada ya había satisfecho veintitrés dólares a cuenta del crédito garantizado con la hipoteca, y que estuvo a ver al demandante quedando convenido en la entrevista que el demandante desistiría de su acción y la demandada satisfaría los restantes cuatrocientos veintisiete dólares con el café que produjese la próxima cosecha de la finca hipotecada; que en efecto entregó al demandante y éste recibió en café y en efectivo el saldo de su deuda sin que el demandante le haya otorgado carta de pago ni cancelado la hipoteca no obstante el requerimiento héchole al efecto.

Fué el pleito a juicio. Ambas partes presentaron su evidencia y, apreciando el resultado de la misma, la corte de distrito llegó a las siguientes conclusiones:

"Se desprende de la prueba que la demandada llevaba una cuenta corriente con el demandante Joaquín Rodríguez y es factible aceptar que Joaquín Rodríguez actuaba de acuerdo con sus hermanos, bajo un entendido en que la Sucesión aparecía como la entidad que realizaba el negocio, aunque el demandante era el que se entendía directamente con todo y aparecía como responsable ante las personas con las cuales hacía negocios.

"Se concluye, además, que el préstamo a que obedece la escritura objeto de la demanda, como cuestión legal, era un negocio distinto a la cuenta corriente de refacción. No obstante, tanto la demandada María Cortés, al hacer sus abonos, como el demandante Joaquín Rodríguez, al recibirlos, y hacer operaciones con la demandada en su cuenta corriente, actuaban en tal forma confusa que es difícil establecer líneas exactas para el juzgador sobre el verdadero balance de la cuenta corriente de refacción.

"Ante esta complicación, el Juez quiso obtener declaraciones específicas del demandante y lo sometió a varias preguntas, cuyas contestaciones nos dan base para resolver el asunto en forma justa.

"El demandante declaró a preguntas del Juez que hay un saldo a favor de la demandada por su cuenta corriente de refacción ascendente a $129.95; y que ese saldo que ella no ha retirado, procede desde el año 1935. Declaró, además, el demandante, que para las cosechas de café del año 1935 la demandada no debía nada por su cuenta corriente. Que ese año entregó en café la suma de $183.37; y declaró, además, que en el año 1936 entregó en café la suma de $63.20.

"Si la demandada no debía nada de su cuenta de refacción en el año 1935 y tiene un saldo a su favor de $129.95 de esa cuenta desde aquella fecha, entonces el importe de las dos cosechas de café de los dos años 1935 y 1936 tenían que ser abonados a su cuenta por el préstamo hipotecario objeto de la demanda.

"A las primeras preguntas del Juez el demandante dijo que él no sabía para qué ella había abonado las cosechas del 1935 y 1936, y cuando el Juez le preguntó más tarde que por qué no abona esas cosechas a su cuenta de hipoteca, entonces trató de arreglar y dijo que la demandada había tomado otras partidas después de radicado el pleito.

"En su prueba de *rebuttal* el demandante no negó en ningún momento que él se hubiera comprometido a recibir las cosechas del año 1935 y 1936 como pago de su cuenta de hipoteca, a pesar de que el hijo de la demandada había declarado sobre ese convenio.

"Estamos convencidos que ese convenio existió no sólo por la forma clara y sincera como declaró el hijo de la demandada, y porque no se presentó prueba para destruir ese convenio, sino por otros hechos que aparecen del mismo récord de este caso, que son los siguientes:

"La demanda se presentó en 18 de marzo de 1935. A pesar de que la demandada fué emplazada al día siguiente, el caso dejó de moverse y fué archivado por abandono. Esto tiende a confirmar la declaración del hijo de la demandada de que al presentarse la demanda se acordó dejar el asunto pendiente para pagar con las cosechas de 1935 y 1936.

"En marzo 6 de 1937 se pidió que se abriera de nuevo el caso por la parte demandante, cuando ya habían pasado las cosechas del 1935 y 1936.

"En la misma moción presentada por el demandante se admite que la demandada se había comprometido a pagar con las cosechas de 1935 y 1936; y aunque se decía en dicha moción que la demandada no lo hizo, no obstante, el mismo demandante declaró en la silla testifical que se le había entregado las cosechas del 1935 y 1936, una valorada en $183.37 y otra en $63.20.

"Después de reinstalado el asunto en el 1937, se anotó la rebeldía de la demandada y se obtuvo del Secretario una sentencia. Cuando se notificó esa sentencia a la parte demandada, ella presentó una solicitud para que se dejara sin efecto la sentencia haciendo constar el convenio que se había realizado y la entrega de las cosechas al demandante.

"Entonces se presentó una estipulación aceptando la parte demandante que se dejara sin efecto dicha sentencia en rebeldía y se admitió una contestación de la demandada en mayo de 1937, volviendo a alegar la entrega del café en 1935 y 1936· y $23.00 en efectivo con un total de $471.00 como saldo de su cuenta de hipoteca.

"Después de esto, no se movió más el asunto por el demandante y en 10 de abril de 1939 la corte dictó una orden para que se archivara el caso, a no ser que la parte demandante moviera el mismo dentro del término de cinco días. Entonces se presentó otra moción por la parte demandante pidiendo que el caso quedara pendiente. En estas condiciones se señaló y se vió el juicio de este pleito.

"Todos estos hechos y demoras apreciadas en conjunto con la prueba, demuestran claramente que es cierto lo alegado en la contestación, que la demandada entregó al demandante sus cosechas de café del año 1935 y 1936 para evitar que continuara este pleito y se ejecutaran sus propiedades.

"Aunque el demandante declaró que la cosecha de café entregada en el 1935 valía $183.37 y que el café entregado en el 1936 valía $63.20, las cantidades de café que él dijo haber recibido, aun a precio bajo, demostrarían un valor más aproximado a la cantidad de $448 que a la suma de $246.57 que fijó el demandante.

"Además, añadiendo al valor del café entregado los $129.95 que tiene el demandante en su poder como saldo de la cuenta corriente de la demandada, cubrirían el importe del préstamo y esto justifica por qué el demandante estuvo tanto tiempo sin mover el pleito después de haber recibido tales cosechas.

"Con respecto a los intereses, no encontramos en los hechos de la demanda ninguna alegación que afirme que no se pagaron inte-

reses hasta la fecha en que se radicó el pleito. Tampoco aparece liquidación alguna con respecto a intereses, aunque se pide en la súplica de la demanda que se paguen intereses vencidos, pero sin especificar cuál es la cantidad vencida correspondiente a ello.

"Como el demandante convino en recibir el café del año 1935 y 1936 como pago de su crédito, y como no tenemos datos precisos sobre las fechas en que ese café fué entregado, y como aparece, además, que el demandante tenía una suma en su poder perteneciente a la demandada como saldo de su cuenta corriente, cualquier declaración que hiciéramos con respecto a los intereses, sería caprichosa.''

Basándose en esas conclusiones y razones la corte dictó "sentencia declarando sin lugar la demanda, y con lugar la contrademanda, y ordenando al demandante que dentro de los 10 días de ser firme esta sentencia proceda a cancelar el gravamen objeto del crédito a que se refiere la demanda, dejando las propiedades de la demandante libre de dicho gravamen,'' con costas, sin incluir honorarios de abogado.

Hemos estudiado la transcripción de evidencia y a nuestro juicio fué apreciada correctamente por el juez sentenciador con ánimo de hacer justicia.

Los argumentos que contiene el extenso alegato del apelante no nos convencen de que la corte de distrito cometiera los errores que le atribuye. Las declaraciones de los testigos de la demandada, Gabriel de Hoyos, que hizo las entregas del café por orden de la demandada, y José Marrero Cortés, hijo de ésta, son detalladas y convincentes.

Preguntado el segundo si había tenido alguna intervención en el asunto objeto del pleito, contestó:

"Estando en Santurce trabajando recibí una carta de mi madre . . . Fuí a hablar con Joaquín Rodríguez . . . A la sucesión Rodríguez, el establecimiento . . . Cuando vine a hablar con Joaquín Rodríguez mamá estaba demandada en la corte y sabía por lo que era, que se trataba de dinero que había que pagarle, y me dijo: quiero hablar contigo, porque tu mamá está un poco atrasada, porque vino la tormenta del 34 y del 1932, que quedaron arruinados, y le dije a Da. María que vinieras a hablar conmigo, y dije: está bien; ¿qué quieres? y me dijo: Pepito, lo que quiero es que Da.

María me entregue la cosecha del 35, y le dije: Joaquín: con mucho gusto se entregará, porque queremos saldar esa deuda cuanto antes.

"Hon. Juez: ¿A qué deuda se refería, se refiere Ud.? —A la hipoteca que mamá tenía sobre la finca, y quedamos en eso, y me fuí a mi trabajo a Santurce, y al poco tiempo me vi sorprendido, porque mamá estaba denunciada otra vez ante la corte, por él, todo porque no se cumplió la palabra de un caballero para otro caballero, y en eso quedó el asunto.

"   *       *       *       *       *       *       *

"Hon. Juez: ¿Qué fué lo que convinieron?—Lo que convinimos fué entregar la cosecha del 1935 y venir a la corte y levantar la demandá y creí que así se hacía y no se hizo.

"P. ¿Se entregó esa cosecha?—Sí, señor; toda la del 35, y no se entregó más porque los palos no produjeron más.

"P. ¿Cuánto café entregaron en esa cosecha?—Treinta y dos quintales y medio o treinta y tres quintales.

• "P. Hablo de la cosecha del 1935.—Sí, señor; porque fué cuando vine a hacer el pacto verbal con Joaquín Rodríguez.

"   *       *       *       *       *       *       *

"P. ¿Además de los treinta y dos quintales que pagó de 1935, sabe si en el 1936 le hizo algún abono?—En el 1936 se abonaron ciento veinte y dos pesos en efectivo y en particular once quintales cincuenta libras de café.

"   *       *       *       *       *       *       *

"P. ¿La cuenta fué pagada por su mamá toda?—Sí, señor.

"P. ¿No debe nada a cuenta de esa escritura?—Absolutamente nada."

Al examinarse este caso tras una primera confusión de dos cuentas diferentes con dos entidades distintas, creada a virtud de las manifestaciones del demandante, se va apoderando de la conciencia del juzgador hasta adueñarse de ella por completo la realidad existente que lo es una cuenta corriente saldada con una sola entidad.

Quizá no surja de la evidencia un ajuste completo, al centavo, del saldo, a virtud de la entrega del fruto, pero atendidas todas las circunstancias concurrentes que puso de relieve el juez sentenciador en su opinión, se impone la conclusión a que llegara, pudiendo afirmarse en apelación que

su sentencia está sostenida por la prueba y no es contraria a la misma ni a la ley. *De minimis non curat lex.* 18 C. J. 481.

En cuanto a la imposición de costas, bastará decir que era el pronunciamiento más favorable al demandante que podía dictar la corte una vez que declaró la demanda sin lugar, de acuerdo con el estatuto especial sobre la materia. No hubo error.

*En consecuencia de lo expuesto,-debe desestimarse el recurso y confirmarse la sentencia.*

El Juez Asociado Sr. Travieso no intervino.